FILED

May 18, 2011

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003501091

1  RICHARD S.E. JOHNS, State Bar No. 053024
   LAW OFFICES OF RICHARD S.E. JOHNS
2  57 Post Street, Suite 604
   San Francisco, CA 94104
3  Telephone: (415) 781-8494

4  Attorneys for Defendants Stefanie A. Salyer,
   individually, Caroline G. Salyer, individually, and Robert
5  Pruett, in his capacity as trustee of the SAS 1999 Trust,
   and in his capacity as trustee of the CGS 1999 Trust

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    EASTERN DISTRICT OF CALIFORNIA

                         SACRAMENTO DIVISION

10 In re:                                    CASE NO.: 09-29162-D-11

11 SK FOODS, LP, a California limited        Chapter 11
   partnership, et al.,
12
                  Debtors.
13
   BANK OF MONTREAL, as                      Adv. Proc. No. 11-02339
14 Administrative Agent, successor by
   Assignment to SK Foods, L.P. and RHM      DCN: RSJ-1
15 Industrial Specialty Foods, Inc., a
   California Corporation, d/b/a Colusa      **REQUEST FOR JUDICIAL
16 County Canning Co.,                       NOTICE IN SUPPORT OF
                                             DEFENDANTS' MOTION TO
17                  Plaintiff,               STAY ADVERSARY
                                             PROCEEDING**
18 v.

19 CALIFORNIA FRANCHISE TAX
   BOARD, STEFANIE A. SALYER, an
20 individual, CAROLINE G. SALYER, an        **Date:**       June 15, 2011
   individual, SAS 1999 TRUST, CGS 1999     **Time:**       10:00 a.m.
21 TRUST, SCOTT SALYER                       **Courtroom:**  34
   REVOCABLE TRUST; and
22 FREDERICK SCOTT SALYER, an
   individual,
23
                  Defendants.
24

25

26

27

28

1
<br>
**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS'<br>MOTION TO STAY ADVERSARY PROCEEDING**

2

3    Defendants Stefanie A. Salyer, Caroline G. Salyer, and Robert Pruett, as trustee of the

4 SAS 1999 Trust and the CGS 1999 Trust, hereby request the Court to take judicial notice of the

5 following documents in support of their motion for stay of the above-captioned adversary

6 proceeding pending before this Court:

7

| Exhibit | Description |
|---------|-------------|
| A | December 10, 2010 Order on Multiple Appeals from Order Denying Motion for a Stay of Proceedings ("Initial District Court Order") |
| B | April 14, 2011 Order on Trustee's Motion for Rehearing on December 10, 2010 Order Reversing the Denial of a Stay of Proceedings ("Remand Order") |

8

9

10

11

12 DATED: May 18, 2011

                    LAW OFFICES OF RICHARD S.E. JOHNS

13

14                 /s/ Richard S. E. Johns

15                 RICHARD S.E. JOHNS
                  Attorneys for Defendants Stefanie A. Salyer,
                  individually, Caroline G. Salyer, individually, and

16                 Robert Pruett, in his capacity as trustee of the SAS
                  1999 Trust, and in his capacity as trustee of the CGS

17                 1999 Trust

18

19

20

21

22

23

24

25

26

27

28

```
 1

 2

 3

 4

 5                      UNITED STATES DISTRICT COURT

 6                      EASTERN DISTRICT OF CALIFORNIA

 7

 8   IN RE:

 9   SK FOODS, L.P.

10          Debtor.

11   BRADLEY SHARP,                      CIV. NO. S-10-1492 LKK

12          Plaintiff,

13              v.

14   SSC FARMS 1, LLC, et al.,

15          Defendants.
     _____/
16   IN RE:

17   SK FOODS, L.P.                      CIV. NO. S-10-1493 LKK

18          Debtor.
     _____/
19   IN RE:

20   SK FOODS, L.P.

21          Debtor.

22   BRADLEY SHARP,                      CIV. NO. S-10-1496 LKK

23          Plaintiff,

24              v.

25   CSSS, L.P., et al.,

26          Defendants.
     _____/
```


EXHIBIT A

1   IN RE:

2   SK FOODS, L.P.

3           Debtor.

4   BRADLEY SHARP,                          CIV. NO. S-10-1497 LKK

5           Plaintiff,

6               v.

7   FRED SALYER IRREVOCABLE
    TRUST, et al.,
8
            Defendants.
9   _____/

10  IN RE:

11  SK FOODS, L.P.

12          Debtor.

13  BRADLEY SHARP,                          CIV. NO. S-10-1498 LKK

14          Plaintiff,

15              v.

16  SKF AVIATION, LLC., et al.,

17          Defendants.

18  _____/

19  IN RE:

20  SK FOODS, L.P.

21          Debtor.

22  BRADLEY SHARP,                          CIV. NO. S-10-1499 LKK

23          Plaintiff,

24              v.

25  SCOTT SALYER, et al.,

26          Defendants.
    _____/

                              2

1  IN RE:

2  SK FOODS, L.P.

3          Debtor.

4  BRADLEY SHARP,                        CIV. NO. S-10-1500 LKK

5          Plaintiff,

6          v.
                                         O R D E R
7  SCOTT SALYER, et al.,

8          Defendants.
   _____/

9

10     Before the court are several appeals of an order of the

11  Bankruptcy Court denying Appellants' motion for a stay of

12  proceedings pending resolution of a related criminal matter also

13  before this court, U.S.A. v. Salyer, No. 2:10-cr-00061-LKK. The

14  Appellee moves to dismiss the appeal on jurisdictional grounds and

15  opposes the appeal on the merits. For the reasons described below,

16  the order of the Bankruptcy Court is reversed.

17                         I. BACKGROUND

18     A.   The Criminal Proceeding

19     On January 5, 2010, the government filed a sealed complaint

20  against Frederick Scott Salyer ("Salyer"). An arrest warrant was

21  issued by a magistrate judge later that day. On February 4,

22  2010, Federal Bureau of Investigations ("FBI") officers arrested

23  Salyer. On February 18, 2010, the U.S.A. filed an indictment.

24     On April 29, 2010, the government filed a superseding

25  indictment. It brings twelve counts and two forfeiture

26  allegations against Salyer. These include two counts under 18

3

1  U.S.C § 1962(c) for conducting and conspiring to conduct the

2  affairs of an enterprise though a pattern on racketeering

3  activity, three counts under 18 U.S.C. § 1343 for wire fraud,

4  one count under 18 U.S.C. § 1519 for destruction, alteration, or

5  falsification of records in a federal investigation, and five

6  counts under 15 U.S.C. § 1 for conspiracy in restraint of

7  trade.[1]

8       With respect to the first count of racketeering, the

9  government alleges that Salyer was the primary leader of SK

10  Foods. Superceding Indictment 3. It claims that Salyer was part

11  of an enterprise that, *inter alia*, "increas[ed] SK Foods'

12  profits by fraudulently inducing certain of SK Foods' customers

13  to pay for adulterated and misbranded processed tomato products

14  by causing the falsification of . . . grading factors and data

15  contained on the quality control documents that accompanied

16  customer-bound shipments of processed tomato products that were

17  produced, purchased, and sold by SK Foods . . . ." Id. at 10.

18  The U.S.A. alleges that Salyer engaged in these activities from,

19  approximately, January 1998 through April 2008. Id. at 13. The

20  government further alleges numerous acts that it claims

21  constitute a pattern of racketeering activity. These include

22  several claims of wire and mail fraud relating to the sale of

23  tomato products to various entities, including creditors in the

24

25       [1] As is almost self evident the court has found the case
   complex within the meaning of the Speedy Trial Act, which results
26  in the case not subject to the time strictures of the act.

1   instant bankruptcy proceedings, and claims of bribery.

2       In the second count of racketeering, the government claims

3   that Salyer conspired with persons employed by and associated

4   with SK Foods to conduct the acts described above during the

5   same time period. Id. at 39-40.

6       The three counts of wire fraud include communications to

7   purchasers of SK Foods' tomato product. Id. at 40-49. Each

8   concerns allegations of bribery of certain employees of the

9   purchasing companies. These companies include creditors in the

10  instant bankruptcy proceedings.

11      With respect to the count of destruction, alteration, or

12  falsification of records in a federal investigation, the

13  government alleges that Salyer altered and falsified, or caused

14  others to alter and falsify, the minutes of a December 14, 2007

15  Board of Directors meeting for the SK Foods Entities. Id. at 51.

16  It claims that he caused the removal of references to Randy

17  Rahal as a Director and Officer of SK Foods several months after

18  Rahal pled guilty to a three count information in this court.

19  Id. at 50. The factual basis for Rahal's plea indicated that he

20  served on the SK Foods Board of Directors from 2004 to 2008 and

21  routinely paid bribes on behalf of SK Foods. Id. at 50-51.

22      The five counts of price fixing concern alleged

23  conspiratorial activity to fix the price of SK Foods tomato

24  products for several companies, including creditors in the

25  instant bankruptcy proceedings. Id. at 52-61.

26      The two forfeiture allegations seek recovery of all real

5

1 and personal property that constitute or is derived from the

2 proceeds traceable to the racketeering and wire fraud counts,

3 which would apparently include property and proceeds otherwise

4 subject to the bankruptcy proceeding.

5     **B.    The Bankruptcy Proceedings**

6        On appeal is an order of the Bankruptcy Court denying

7 Appellants' motion to stay proceedings in seven adversarial

8 actions. These include (1) an action to substantively

9 consolidate various non-debtor SK Foods entities with the SK

10 Foods estate, No. 10-02014; (2) an action to avoid a fraudulent

11 transfer of a drum line to CSSS, an Appellant entity, pursuant

12 to a written contract, No. 09-02543; (3) an action seeking title

13 to three parcels of real property on the grounds that SK Foods

14 provided funds for the purchase of the property and was not

15 repaid, No. 09-02692; (4) a claim of breach of fiduciary duty

16 against Salyer premised on the allegations in the previous three

17 actions, No. 10-02015; (5) an action to avoid allegedly

18 preferential and fraudulent transfers, No. 10-02016; (6) an

19 action to recover money that was allegedly loaned by SK Foods to

20 Salyer to pay for a life insurance policy, No 10-02017; and (7)

21 an action for substantive consolidation of the SK Foods and the

22 RHM Estates, No. 09-29162. The RHM Estates are not parties to

23 this appeal.

24     **C.    Procedural Posture**

25        On April 28, 2010, Salyer, the Scott Salyer Revocable

26 Trust, SK PM Corp., SKF Canning, LLC, Blackstone Ranch

6

1  Corporation, Monterey Peninsula Farms, LLC, Salyer Management
2  Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS
3  Farms, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III,
4  LLC, SKF Aviation, LLC, CSSS, LP, Fred Salyer Irrevocable Trust,
5  and Gerard Rose as Trustee of Fred Salyer Irrevocable Trust
6  ("Appellants") filed a motion to stay the seven adversary
7  proceedings discussed above pending resolution of the criminal
8  proceedings against Salyer. They argued that a stay should be
9  issued, *inter alia*, to protect Salyer's Fifth Amendment rights
10 and the due process rights of the other Appellants who, they
11 contend, require Salyer's testimony to mount a defense to the
12 adversary proceedings. On May 4, 2010, Appellants filed in the
13 bankruptcy proceedings a request for judicial notice of the
14 Superceding Indictment of Salyer, which was filed on April 29,
15 2010. They did not attempt to amend or revise their motion in
16 light of the Superceding Indictment.
17     On May 12, 2010, the Official Committee of Unsecured
18 Creditors filed an opposition to Appellants' motion to stay.[2]
19 Also on May 12, 2010, Bradley Sharp, the Bankruptcy Trustee
20 ("Appellee" or "Trustee") filed a response to the motion to
21 stay. The Trustee argued, *inter alia*, that the indictment and
22 the adversary proceedings are not based on the same matter or
23 same or closely related facts, that prosecution of the adversary
24 proceedings will not impair Salyer's Fifth Amendment rights, and
25 _____
26     [2] Only the Trustee has opposed the instant appeal.

7

1  that a stay is otherwise not appropriate.

2      On June 1, 2010, the Bankruptcy Court denied Appellants'

3  motion for a stay. It decided, *inter alia*, that, with one minor

4  exception, the factual allegations in the adversary proceedings

5  bear no significant relationship to the allegations in the

6  indictment. The court continued to balance the so-called <u>Keating</u>

7  factors, from which it determined that a stay of proceedings was

8  not proper. <u>See</u> <u>infra</u> Section III.B.1 (discussion of <u>Keating</u>

9  factors). This order was issued in all of the seven adversarial

10 proceedings discussed above.

11     On June 16, 2010, Appellants filed notices of appeal of

12 this order in each of the seven proceedings. On June 17, 2010,

13 Salyer filed in the criminal action an Emergency Application to

14 Enjoin and Stay Discovery of the bankruptcy proceedings. On June

15 18, 2010, the court temporarily stayed discovery in the

16 bankruptcy proceedings in light of the June 17, 2010 motion. On

17 August 3, 2010, the court held a hearing on the emergency

18 application. As a result of the hearing, the court continued the

19 stay until resolution of the instant appeals.

20     On August 4, 2010, Appellants filed an opening brief. They

21 argue that, *inter alia*, the criminal indictment and the

22 adversary proceedings overlap, that the denial of the stay

23 offends the due process rights of the non-debtor entities, and

24 that the Bankruptcy Court did not properly apply the <u>Keating</u>

25 factors. On August 19, 2010, the Trustee filed a brief in

26 opposition. He contended that the Appellants failed to show that

1  the Bankruptcy Court abused its discretion in denying the stay
2  of proceedings. Appellants filed a reply on August 3, 2010.

3      The Trustee also filed two motions relating to the appeals.
4  First, on August 16, 2010, the Trustee filed a motion to dismiss
5  the appeals on the grounds that the court lacks jurisdiction to
6  hear them. Second, the Trustee filed a motion to strike a
7  declaration filed in support of Appellants' brief on the ground
8  that the evidence was not presented to the Bankruptcy Court. The
9  court heard oral argument on the appeals and motions on October
10  12, 2010.

11                 **II. STANDARD**

12      The standard of review of bankruptcy court decisions by
13  district courts is well-established, and uncontested in the
14  instant action. See Appellants' Opening Brief re: Stay at 4;
15  Appellants' Opening Brief re: Preliminary Injunction at 2;
16  Appellee's Opening Brief re: Stay at 2-3. When reviewing
17  decisions of a bankruptcy court, district courts apply standards
18  of review applicable to the courts of appeals when reviewing
19  district court decisions. In re Baroff, 105 F.3d 439, 441 (9th
20  Cir. 1997); see also In re Fields, No. CIV. S-09-2930 FCD, 2010
21  WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of
22  review over a bankruptcy court's decision is identical to the
23  standard used by circuit courts reviewing district court
24  decisions.") (citation omitted).

25      The bankruptcy court's conclusions of law are reviewed *de*
26  *novo*. In re Sunnymead Shopping Center Co., 178 B.R. 809, 814

1  (9th Cir. 1995) (citing <u>In re Pecan Groves of Arizona</u>, 951 F.2d

2  242, 244 (9th Cir. 1991)). District courts review the bankruptcy

3  court's findings of fact for clear error. <u>In re Sunnymead</u>

4  <u>Shopping Center Co.</u>, 178 B.R. at 814 (citing <u>In re Siriani</u>, 967

5  F.2d 302, 303-04 (9th Cir. 1992)); <u>see also</u> Fed. R. Bank. P.

6  8013 ("Findings of fact, whether based on oral or documentary

7  evidence, shall not be set aside unless clearly erroneous . . .

8  .")

9      District courts review a "bankruptcy court's choice of

10 remedies . . . for an abuse of discretion, since it has broad

11 equitable remedial powers." <u>In re Sunnymead Shopping Center Co.</u>,

12 178 B.R. at 814 (citing <u>In re Goldberg</u>, 168 B.R. 382, 284 (9th

13 Cir. 1994) (other citations omitted.). The Ninth Circuit has

14 held that, "Under this standard, 'a reviewing court cannot

15 reverse unless it has a definite and firm conviction that the

16 court below committed a clear error of judgment in the

17 conclusion it reached upon a weighing of the relevant factors."

18 <u>In re Sunnymead Shopping Center Co.</u>, 178 B.R. at 814 (quoting <u>In</u>

19 <u>re Goldberg</u>, 168 B.R. at 384). With respect to review of a

20 denial of a motion to stay, district courts review a bankruptcy

21 court's "ruling on a party's request to stay proceedings for an

22 abuse of discretion." <u>Fed. Sav. & Loan Ins. Corp. v. Molinaro</u>,

23 889 F.2d 899, 902 (9th Cir. 1989) (citing <u>Mediterranean</u>

24 <u>Enterprises, Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1465 (9th

25 ////

26 ////

Cir. 1983)).[3]

## III. ANALYSIS

### A.   Motion to Dismiss

The Trustee moves to dismiss the instant appeal on the grounds that this court lacks jurisdiction to hear it.[4] Specifically, the Trustee contends that the order denying the stay is not a final order and is not appropriate for interlocutory review. Appellants argue that this court has jurisdiction because this order is final under the irreparable injury doctrine and the pragmatic approach to assessing finality in bankruptcy proceedings. They further argue that the appeal is properly subject to interlocutory review.

Under 28 U.S.C. § 158(a), "district courts . . . have jurisdiction to hear appeals . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under

---

[3] It appears to this court quite odd that district courts review decisions of bankruptcy courts in this manner given that bankruptcy courts are a subsidiary division of district courts. It may be that the restricted standards of review are merely a way of protecting both courts from unnecessary repetition of frivolous contentions, and that in more serious matters district courts should not apply such a deferential review. Nonetheless, this court does not consider whether district courts may depart from this standard of review in unusual circumstances because all parties agree as to the applicable standard and there appears to be no support for that position, in any event.

[4] The Trustee has also moved to strike a declaration filed in support of the appeal. The court will consider this motion along with its discussion of the merits of the appeal itself.

11

section 157 of this title."[5] Section 157 allows district courts

to refer any or all cases under title 11 to a bankruptcy court.

The district court here so referred the instant matters on

appeal to the bankruptcy court. Accordingly, district courts

have "discretionary appellate jurisdiction over . . .

interlocutory order[s] of a bankruptcy court." In re Kassover,

343 F.3d 91, 94 (2d Cir. 2003); see Matter of Texas Extrusion

Corp., 844 F.2d 1142, 1156 (5th Cir. 1988) (same); In re

Laurent, 149 Fed. Appx. 833, 835 (11th Cir. 2005); see also

Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 441 n.1

(9th Cir. 1983) (interpreting similar language that was part of

28 U.S.C. § 1334(b) prior to 1984 modification).

This type of appellate jurisdiction differs significantly

from the jurisdiction granted to Courts of Appeal to hear

appeals of interlocutory orders. See In re Kassover, 343 F.3d at

94; Fondiller, 707 F.2d at 441 n.1. Specifically, the district

court maintains original jurisdiction over bankruptcy

proceedings, and merely refers such proceedings to bankruptcy

courts. In re Combustion Engineering, Inc., 391 F.3d 190, 225

(3d Cir. 2004) (citing 28 U.S.C. §§ 151, 157(a)); 28 U.S.C. §

1334(b) ("[T]he district courts shall have original but not

---

[5] The court notes that Appellants did not file a motion for
leave to appeal the denial of their motion for a stay of
proceedings. Under Fed. R. Bank. 8003(c), "If a required motion for
leave to appeal is not filed, but a notice of appeal is timely
filed, the district court . . . may consider the notice of appeal
as a motion for leave to appeal." The court so considers the notice
of appeal in this case.

1 exclusive jurisdiction of all civil proceedings arising under

2 title 11, or arising in or related to cases under title 11.");

3 28 U.S.C. § 157 ("Each district court may provide that any or

4 all cases under title 11 and any or all proceedings arising

5 under title 11 or arising in or related to a case under title 11

6 shall be referred to the bankruptcy judges for the district.").

7 Thus, a district court may decide to hear an interlocutory

8 appeal of any order of a bankruptcy court subject only to review

9 by the Court of Appeals for abuse of discretion.

10      In light of this broad authority to hear interlocutory

11 appeals, the court does not decide whether the order at issue is

12 final nor does it determine whether it falls within any of the

13 exceptions briefed by the parties. Rather, the court grants

14 Appellants leave to appeal the Bankruptcy Court's order on the

15 grounds that determining whether to stay the proceedings will

16 significantly effect the nature of the bankruptcy proceedings

17 and, conceivably, the criminal proceedings pending in this

18 court. Thus, the Trustee's motion to dismiss is denied.

19      B.   Merits of the Appeal

20           1.   Standard to Stay Proceedings

21      Stays of civil proceedings pending the outcome of criminal

22 proceedings are not ordinarily required by the Constitution.

23 Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th

24 Cir. 1995) (citations omitted). The Ninth Circuit has held that,

25 "[I]n the absence of substantial prejudice to the rights of the

26 parties involved, [simultaneous] parallel [civil and criminal]

13

proceedings are unobjectionable under our jurisprudence." <u>Id.</u>
(quoting <u>S.E.C. v. Dresser Indust., Inc.</u>, 628 F.2d 1368, 1374
(D.C. Cir. 1980)). A court may, however, decide in its
discretion to stay civil proceedings "when the interests of
justice seem [] to require such action." <u>Id.</u> (internal citations
omitted).

When deciding whether to stay civil proceedings, courts
should consider "the particular circumstances and competing
interests involved in the case[s]." <u>Id.</u> (quoting <u>Federal Sav. &</u>
<u>Loan Ins. Corp. v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989)).
The Circuit has instructed the court to consider "the extent to
which the defendant's fifth amendment rights are implicated."
<u>Id.</u> (internal quotation omitted).

Additionally, courts "should generally consider the
following factors:

(1)   the interest of the plaintiffs in proceeding
      expeditiously with this litigation or any particular
      aspect of it, and the potential prejudice to
      plaintiffs of a delay;

(2)   the burden which any particular aspect of the
      proceedings may impose on defendants;

(3)   the convenience of the court in the management of its
      cases, and the efficient use of judicial resources;

(4)   the interests of persons not parties to the civil
      litigation; and

////

14

1       (5)  the interest of the public in the pending civil and

2             criminal litigation."

3  Id. at 324-25 (citing Molinaro, 889 F.2d at 903).

4     The Ninth Circuit has cautioned, however, that, "A

5  defendant has no absolute right not to be forced to choose

6  between testifying in a civil matter and asserting his Fifth

7  Amendment privilege. Not only is it permissible to conduct a

8  civil proceeding at the same time as a related criminal

9  proceeding, even if that necessitates invocation of the Fifth

10  Amendment privilege, but it is even permissible for the trier of

11  fact to draw adverse inferences from the invocation of the Fifth

12  Amendment in a civil proceeding." Id. at 326. Despite the

13  generosity of the standard, it is nonetheless true that

14  permitting simultaneous proceedings may seriously undermine the

15  ability of a person presumed innocent to defend himself and may

16  provide the prosecution with an undue advantage because it will

17  have access to the evidence tendered in the bankruptcy

18  proceedings.

19       **2.   Factual Findings**

20     While this court reviews the Bankruptcy Court's decision to

21  deny the stay on an abuse of discretion standard, it may

22  nonetheless review the factual findings of the Bankruptcy Court

23  for clear error. Consequently, if the court finds any of the

24  Bankruptcy Court's findings of fact to be clearly erroneous, it

25  may reverse those findings and any order premised on the

26  findings.

In its order denying Appellants' motion for a stay, the
Bankruptcy Court made the following findings of fact:

    (1)   That the adversary proceedings bear no significant
           relationship to the allegations in the superceding
           indictment against Salyer. Memorandum Opinion at 3-6.

    (2)   That the court does not foresee any testimony Salyer
           might give in the adversary proceedings that would
           legitimately be subject to Salyer's Fifth Amendment
           rights. Memorandum Opinion at 5.

    (3)   That the longer the adversary proceedings are delayed,
           the less likely it is that the Trustee will be able to
           recover the assets he seeks because there is a real
           risk that Appellants would dissipate the assets of the
           debtor entities. Memorandum Opinion at 8-9.

    (4)   That the public's interests in ensuring that aggrieved
           persons are made whole as rapidly as possible and in
           the prompt resolution of civil cases far outweighs the
           public's interest in the integrity of criminal cases
           here because the government has not sought to
           intervene in these adversary actions.[6] Memorandum
           Opinion at 10.

---

[6] The government has intervened in non-bankruptcy civil
proceedings relating to U.S.A. v. Salyer, and a stay is in place
for those cases. See Morning Star Packing Company v. SK Foods LP,
2:09-cv-00208-MCE (E.D. Cal.); Four In One Company, Inc. v. SK
Foods, LP, 2:08-cv-03017-MCE (E.D. Cal.). Stays are also in effect
for two other non-bankruptcy civil case. See Brewer v. Salyer,
1:06-cv-01324-AWI-DLB (E.D. Cal.); Morning Star Packing Company v.
SK Foods, Merced County Superior Court Case No. CU 151242.

(5)   That the interest of the Trustee and the creditors in a speedy resolution of the adversary proceedings is of prime importance in this case. Memorandum Opinion at 6.

(6)   That the joint plan of liquidation proposed by the secured creditors and the unsecured creditors are often fragile and, thus, any delays in the adversary proceedings would "almost certainly be to the detriment of creditors." Memorandum Opinion at 9-10.

The court finds that the fifth and sixth findings of fact are not clearly erroneous. However, the court determines that the first four findings are clearly erroneous in whole or in part.

### i.   Relationship Between Adversary Proceedings and Criminal Indictment, Implication of Fifth Amendment

The Bankruptcy Court correctly noted that, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." Dresser Indust., Inc., 628 F.2d at 1375-76. Specifically, "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice

17

1   the case." <u>Id.</u> at 1376. In <u>Dresser</u>, the Court of Appeals

2   reasoned that, "[t]he case at bar is a far weaker one for

3   staying the administrative investigation [because no indictment

4   has been filed and, thus,] no Fifth Amendment privilege

5   threatened." The Ninth Circuit adopted this reasoning in

6   <u>Molinaro</u>, where it held that the district court did not abuse

7   its discretion by deciding that the burden on the defendant's

8   Fifth Amendment privilege was negligible because no related

9   criminal indictments were pending against him at the time of its

10  ruling. 889 F.2d at 903.

11       Ultimately, when considering a motion to stay proceedings,

12  courts must determine "the extent to which the defendant's fifth

13  amendment rights are implicated." <u>Id.</u> at 902. Here, the

14  Bankruptcy Court conducted a technical comparison of the

15  specific allegations in the criminal indictment and the

16  adversary proceedings. Accordingly, it "conclude[d] that, with

17  one minor exception, the factual allegations in the adversary

18  proceedings bear no significant relationship to the allegations

19  in the indictment." Memorandum Opinion at 3. The Bankruptcy

20  Court continued to reject Appellants' contention that the

21  reference to an enterprise in some of the adversary complaints

22  is the same enterprise alleged in the criminal proceeding. It

23  found that the enterprise alleged in the indictment was premised

24  upon allegations of "mail fraud, wire fraud, and bribery with

25  respect to the prices charged and quality of product sold to its

26  customers, whereas the adversary complaints allege inter-company

18

1  transfers among the Salyer entities themselves, commingling of

2  assets, common ownership, management, and control, intermingling

3  of business operations and activities, and so on." <u>Id.</u> at 4.

4       While the Bankruptcy Court may be correct that specific

5  allegations of the criminal indictment are, for the most part,

6  distinct from the specific allegations of the adversary

7  proceedings, its conclusion that these distinctions demonstrate

8  that Salyer's Fifth Amendment rights are not implicated is

9  clearly erroneous. As an initial matter, the assets sought in

10  the criminal forfeiture proceedings overlap to a significant

11  degree with the assets sought in the adversary proceedings.

12  Moreover, Salyer's Fifth Amendment rights are implicated any

13  time that he testifies or responds to discovery requests that

14  are admissible to prove that he engaged in the conduct alleged

15  in the indictment. This conduct can exceed the specific

16  allegations of the indictment. Specifically, under Fed. R. Evid.

17  404(b), evidence of crimes, wrongs, and acts not alleged in the

18  indictment, may be used to prove "motive, opportunity, intent,

19  preparation, plan, knowledge, identity, or absence of mistake or

20  accident." Under this rule, for example, evidence that Salyer

21  fraudulently transferred assets might be used to prove that

22  Salyer intended to commit the fraudulent acts alleged in the

23  indictment, or had a plan to conceal fraudulently obtained

24  assets. Indeed the asserted concealment of assets was a

25  predominant governmental theme relative to bail.

26       Put directly, even though the specific allegations of the

19

1   indictment and the adversary proceedings may differ, the

2   bankruptcy litigation seriously implicates Salyer's Fifth

3   Amendment rights. He has been criminally accused of engaging in

4   an enterprise though which he allegedly obtained assets, which

5   the Trustee is now seeking to recover and to prevent fraudulent

6   transfer of them. Accordingly, the Bankruptcy Court's finding

7   that the proceedings do not overlap and that Salyer's Fifth

8   Amendment rights are not implicated in the adversary proceedings

9   is clearly erroneous.[7]

10              ii.   Risk that Appellants will Dissipate Assets

11       When considering whether the Trustee and creditors would

12  suffer prejudice if a stay were to issue, the Bankruptcy Court

13  reasoned as follows:

14          In the present case, the court has already been
            sufficiently persuaded of a . . . risk of dissipation
15          of assets to issue a preliminary injunction against
            the defendants in the adversary proceedings, who are
16          moving parties in this motion, from transferring
            assets previously transferred to them by or through
17          the debtor. The moving parties now argue that the
            injunction would protect the trustee and creditors
18          from any risk of further dissipation of assets during
            the pendency of a stay. The court concludes to the
19          contrary - the findings and conclusions upon which the
            injunction is based persuade the court that a real
20          risk continues to exist.

21  _____

          [7] The court notes that the Trustee objects to the declaration
22  of counsel for Appellants filed in support of the appeal on the
    grounds that it was not raised before the Bankruptcy Court. The
23  Trustee is correct that this court should not consider evidence
    that was not before the Bankruptcy Court. Appellants agree that the
24  evidence was not presented to the Bankruptcy Court, but rather was
    provided to this court to provide an overview of matters of which
25  the Bankruptcy Court was aware. Because this court has not relied
    on the affidavit in reaching its conclusions, the motion to strike
26  is granted.

Memorandum Opinion at 9. The Bankruptcy Court does not in any way address why the entrance of the preliminary injunction will not protect the Trustee and the creditors. Appellants raised this serious concern before the Bankruptcy Court. Failure to provide any explanation as to why the preliminary injunction is insufficient to protect the Trustee and creditors from dissipation of assets due to debtor conduct is clear error.[8]

### iii. Balance of Public Interests

In applying the Keating test, the Bankruptcy Court was tasked to evaluate the public interest. It explained that while it recognizes the public's interest in the integrity of criminal cases, that interest is relatively low in the instant case because the government has chosen not to intervene in the adversary proceedings. The court has been unable to find any case to support the contention that the weight of the public's interest in the integrity of criminal proceedings is somehow influenced by the prosecutor's decision to intervene. See, e.g., Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum, 2:09-cv-0954-FCD-EFB, 2009 U.S. Dist. LEXIS 60849, at *10 (E.D. Cal. Jul. 15,

_____

[8] The Bankruptcy Court may have been had in mind the Drum Line issue. But that itself requires testimony that may involve Salyer's Fifth Amendment rights. While the court may share some of the same concern about that single incident, it is, at this stage, unclear as to whether there was a violation of the temporary restraining order and, thus, relying on it seems misplaced in light of the serious adverse consequences. Furthermore, the parties have represented that the only remaining assets are real property and money. These assets, unlike the Drum Line, cannot be transferred without the approval of the Bankruptcy Court and, thereby, then present little or no risk that they will be wrongfully transferred while the preliminary injunction is in effect.

2009) (Court does not mention intervention by government); <u>James v. Conte</u>, No. C. 04-5312 SI, 2005 U.S. Dist. LEXIS 46962, *5 (N.D. Cal. Apr. 19, 2005) (same); <u>Javier H. v. Garcia-Botello</u>, 218 F.R.D. 72, 75-76 (W.D.N.Y 2003), (court simultaneously granted a stay of proceedings and denied a motion to intervene by the government). Indeed, it seems misplaced to suggest that the prosecutor's view demonstrates the public interest in light of the constitutionally protected right of presumed innocence and the obligation of proof which falls only on the prosecution. The Bankruptcy Court has not identified any other reasons why the public interest in the integrity of this criminal case is relatively low. This conclusion is also in clear error. There is no factual basis to support the Bankruptcy Court's conclusion that the public interest in the integrity of the criminal case is "far outweighed in this case by the public's countervailing interests in ensuring that aggrieved persons are made whole as rapidly as possible . . . and by the public's interest in the prompt resolution of civil cases." Memorandum Opinion at 10 (citations and internal quotations omitted).[9]

### 3.   Reversal of Bankruptcy Court's Decision

For the reasons discussed above, the court finds that the

---

[9] Appellants also argue that the Bankruptcy Court made an error of law in its application of the <u>Keating</u> factors. Specifically, they argue that the court wrongly gave the interests of the creditors the weight of the interests of plaintiffs. Given the court's conclusion that there were factual errors that demand reversal, the court need not address the merits of this argument.

Bankruptcy Court made several significant erroneous factual findings in its application of the <u>Keating</u> factors. Based on these clearly erroneous factual findings, the court determines that the Bankruptcy Court abused its discretion in denying Appellants' motion for a stay. The remaining question in this appeal is, then, what order the court should issue. Remand with instructions might well be appropriate because this court reviews for abuse of discretion. However, the court finds that it should craft an order staying proceedings in part because it is responsible for the conduct of the criminal trial and is more familiar with the values informing criminal proceedings.

Accordingly, the court orders a stay of all further bankruptcy proceedings where Appellants make a credible showing that discovery from or testimony of Scott Salyer or his criminal counsel is relevant to the proceedings. The court wishes to be clear, the orders heretofore issued on a preliminary basis are unaffected by this order.

## IV. CONCLUSION

For the foregoing reasons the court REVERSES the decision of the Bankruptcy Court denying Appellants motion to stay as described above.

The court FURTHER ORDERS that the Trustee's motion to dismiss is DENIED and the Trustee's motion to strike is GRANTED.

IT IS SO ORDERED.

DATED:   December 9, 2010.

23

1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF CALIFORNIA
8  IN RE:
9  SK FOODS, L.P.
10         Debtor.
11 BRADLEY SHARP,                    CIV. NO. S-10-1492 LKK
12         Plaintiff,
13             v.
14 SSC FARMS 1, LLC, et al.,
15         Defendants.
   _____/
16 IN RE:
17 SK FOODS, L.P.                    CIV. NO. S-10-1493 LKK
18         Debtor.
   _____/
19 IN RE:
20 SK FOODS, L.P.
21         Debtor.
22 BRADLEY SHARP,                    CIV. NO. S-10-1496 LKK
23         Plaintiff,
24             v.
25 CSSS, L.P., et al.,
26         Defendants.
   _____/


EXHIBIT B

```
 1  IN RE:

 2  SK FOODS, L.P.

 3          Debtor.

 4  BRADLEY SHARP,                         CIV. NO. S-10-1497 LKK

 5          Plaintiff,

 6                  v.

 7  FRED SALYER IRREVOCABLE
    TRUST, et al.,
 8
            Defendants.
 9  _____/

10  IN RE:

11  SK FOODS, L.P.

12          Debtor.

13  BRADLEY SHARP,                         CIV. NO. S-10-1498 LKK

14          Plaintiff,

15                  v.

16  SKF AVIATION, LLC., et al.,

17          Defendants.

18  _____/

19  IN RE:

    SK FOODS, L.P.
20
            Debtor.
21
22  BRADLEY SHARP,                         CIV. NO. S-10-1499 LKK

23          Plaintiff,

24                  v.

25  SCOTT SALYER, et al.,

26          Defendants.
    _____/
```

2

```
1  IN RE:

2  SK FOODS, L.P.

3           Debtor.

4  BRADLEY SHARP,                              CIV. NO. S-10-1500 LKK

5           Plaintiff,

6           v.

7  SCOTT SALYER, et al.,                            O R D E R

8           Defendants.
   _____/
9
```

10     Before the court is a motion for rehearing on this court's
11 December 10, 2010 order reversing the denial of a stay of
12 proceedings before the Bankruptcy Court, brought by the Bankruptcy
13 Trustee ("Trustee"). The court resolves the ambiguity in its prior
14 order below.

15                       **I. BACKGROUND**

16     On December 10, 2010, the court reversed a decision of the
17 bankruptcy court denying a motion to stay adversarial proceedings.[1]
18 As to remedy, the court ordered "a stay of all further bankruptcy
19 proceedings where Appellants make a credible showing that discovery
20 from or testimony of Scott Salyer or his criminal counsel is
21 relevant to the proceedings. The court wishes to be clear, the
22 orders heretofore issued on a preliminary basis are unaffected by
23 this order." Order at 23. The court did not indicate what issues,
24 if any, were to be remanded to the Bankruptcy Court.

25 _____

26     [1] The court incorporates its December 10, 2010 order.

3

1    Initially, the court set this motion to be heard on January
2  31, 2011. On January 25, 2011, however, the Trustee and Appellants
3  filed a stipulation to continue the hearing to a date no later than
4  March 31, 2011 so that the parties could engage in mediation. On
5  January 27, 2011, the court continued the hearing to April 11,
6  2011. On March 28, 2011, Appellants filed a supplemental objection
7  to the Trustee's motion. On April 4, 2011, the Trustee filed a
8  reply brief and the unsecured creditors joined the Trustee's
9  motion.[2] The motion was heard on April 11, 2011.

10                          II. ANALYSIS

11    The Trustee has moved for a rehearing on three issues, all
12  of which concern interpretation of the court's order on remedy.
13  Specifically, he requests clarification as to whether the
14  December 10, 2010 order constitutes an entry of a stay in the
15  bankruptcy proceedings. He further requests that this court
16  establish a procedure and time frame for the parties to submit
17  evidence in support of and in opposition to the specific stays.
18  Additionally, he argues that the court should amend the standard
19  set forth in the prior order to require a stay where testimony
20  of Scott Salyer ("Salyer") or his criminal counsel is necessary,
21  rather than relevant, to the proceedings.[3]

22  _____

23      [2] The committee of unsecured creditors requests permission to
    file a brief as unofficial amicus curiae and for permission to
24  appear for oral argument. The court grants this request.

25      [3] The Trustee has also argued, in the alternative, that if the
    December 10, 2010 order was to operate as a stay, that it should
26  only apply to the adversary proceedings where Salyer is a party.

                              4

1    The court acknowledges that its prior order was ambiguous

2 as to the remedy it issued. Accordingly, the court clarifies[4]

3 the remedy as follows: The court found that the due process

4 rights of Appellants may be infringed if they cannot adequately

5 defend themselves in the adversary proceedings without discovery

6 from or testimony of Salyer, who cannot be compelled to testify

7 under the Fifth Amendment, or his criminal counsel, who cannot

8 be compelled to violate the attorney-client privilege.

9 Nonetheless, the court recognizes that it is possible for the

10 adversary proceedings to continue without offending these

11 rights. Thus, the court is remanding the case to the Bankruptcy

12 Court to decide, in the first instance, whether discovery from

13 or testimony of Salyer or his criminal counsel is reasonably

14 necessary[5] to dispose of a particular matter before the

15 Bankruptcy Court in the adversary proceedings. A matter is

16 reasonably necessary if Appellants cannot adequately defend

17 themselves in an adversary proceeding without evidence from

18 Salyer or his criminal counsel. The Bankruptcy Court's decisions

19 on these matters may be directly appealed to this court on the

20

21    [4] Appellants challenge this court's jurisdiction to clarify
its prior order. Under Fed. R. Civ. P. 60(a), "the court may
correct . . . a mistake arising from oversight or omission whenever
22 one is found in a judgment, order, or other part of the record."
Under this rule, the court may amend its prior order to better
23 reflect its understanding of the issues and appropriate remedy.

24    [5] Upon further reflection, the court finds that the relevance
standard it previously ordered is too broad. Given the significant
25 overlap between testimony in the adversary proceedings and the
criminal proceedings, discovery from or testimony of Salyer or his
26 criminal counsel would almost necessarily be relevant.

1  same grounds that the court had jurisdiction to hear the appeal

2  of the first order denying a stay of proceedings.

3      Further, Appellants shall file their initial motions to

4  stay before the Bankruptcy Court within fourteen (14) days of

5  the issuance of this order.[6] These motions must be set for

6  hearing as early as practicable under the Bankruptcy Court's

7  local rules and procedures. The Bankruptcy Court shall issue

8  written orders explaining the basis for its decisions to stay or

9  not to stay the proceedings. Additionally, the court recognizes

10 that an adversary proceeding may not be subject to a stay at

11 this time, but may, through the course of litigation, require a

12 stay under the standard set forth above. In this situation,

13 Appellants shall file a motion to stay proceedings within

14 fourteen (14) days of their discovery of new evidence or

15 circumstances, which they contend reasonably requires evidence

16 from Salyer or his criminal counsel to adequately defend

17 themselves. This motion must also be set for hearing as early as

18 practicable. In addition to the burden set forth above,

19 Appellants must also demonstrate why the new facts or

20 circumstances that are claimed to exist were not shown at the

21 time of the initial motion and were only reasonably discovered

22 within fourteen (14) days of the filing of the motion.

23 Appellants may not sit on their rights. Failure to bring a

24

---

25      [6] The court assumes that Appellants intend to stay all
adversary proceedings due to their representations at oral
argument. The court is in no way requiring the Appellants to seek
26 such stays.

6

1  timely motion to stay will result in denial of the motion.

2      Moreover, in his reply, the Trustee attempts to introduce

3  new evidence in support of his argument that the court amend its

4  prior order. Specifically, the court concluded that the

5  Bankruptcy Court's finding that the preliminary injunction will

6  not protect the Trustee and creditors was in clear error because

7  the Bankruptcy Court presented no explanation as to why the

8  preliminary injunction was insufficient to protect those

9  interests. The Trustee now attempts to seek this court's

10 consideration of recent events to suggest that the preliminary

11 injunction may actually be insufficient. This evidence must

12 first be brought before the Bankruptcy Court in a motion to

13 amend or lift a stay. If the Trustee decides to bring such a

14 motion, the losing party may appeal the Bankruptcy Court's order

15 on the motion to this court, as is customary in this case. At

16 this time, however, it is not appropriate for the court to

17 consider this new evidence.[7]

18     IT IS SO ORDERED.

19     DATED:  April 13, 2011.

20

21 _____

22      [7] The court notes that in its prior order affirming the
   Bankruptcy Court's preliminary injunction, the court decided an
23 issue that was not previously raised before the Bankruptcy Court:
   namely, whether counsel for the non-debtor entity-Appellants could
24 recover fees. The court only did so pursuant to stipulation of the
   parties and in light of the unique relationship between the
25 Bankruptcy and District Courts. No such stipulation exists here
   and, thus, the court declines to decide this question in the
26 instant motion.

                                    7